**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| KL INDUSTRIES, INC., | ) | Case No. 06 B 04882 |
| | ) | |
| Debtor. | ) | Hon. Carol A. Doyle |

**SECOND SUPPLEMENTAL FINAL ORDER AUTHORIZING
DEBTOR IN POSSESSION TO OBTAIN POST-PETITION FINANCING
PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,
PROVIDING ADEQUATE PROTECTION AND GRANTING
LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS**

Upon the motion (the "Motion") of KL Industries, Inc. (the "Debtor", as debtor and debtor in possession) for the entry of a second supplemental final order (this "Second Supplemental Final Order") pursuant to sections 105, 361 and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing it to: (i) obtain post-petition financing pursuant to section 364 of the Bankruptcy Code from LaSalle Bank National Association (the "Post-Petition Lender"), subject to the terms and conditions set forth herein, (ii) grant security interests, mortgages and other liens and superpriority claims to the Post-Petition Lender (including a priority lien pursuant to section 364(c)(1) of the Bankruptcy Code, and claims, liens and security interests pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code), and (iii) grant security interests, mortgages and other liens and superpriority claims in order to provide adequate protection to and for the benefit of the Prepetition Lender (as hereinafter defined), all as more fully set forth herein; the Court having entered, on June 21, 2006, the Final Order Authorizing Debtor in Possession to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims (the "Final Financing Order"); the Court having entered, on August 14, 2006, the Supplemental Final Order

Authorizing Debtor in Possession to Obtain Post-Petition Financing Pursuant to Section 364 of the Bankruptcy Code, Providing Adequate Protection and Granting Liens, Security Interests and Superpriority Claims (the "First Supplemental Final Financing Order"); upon the proceedings held before this Court; and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:

A. On May 2, 2006 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is now operating its business and managing its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. There is presently no pending request or motion for appointment of a trustee or examiner. On May 9, 2006, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in this chapter 11 case (the "Chapter 11 Case").

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of the Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

C. Pursuant to the Loan and Security Agreement dated August 15, 2002, as amended, modified or supplemented (the "Prepetition Loan Agreement"), by and between KL Industries, Inc., as borrower (the "Borrower"), and LaSalle Bank National Association (the "Prepetition Lender"), as lender, and related agreements and documents (collectively, with the Prepetition Loan Agreement, the "Prepetition Financing Documents"), the Prepetition Lender has made certain loans and financial accommodations to the Borrower to, *inter alia*, fund the Borrower's operations. The Borrower's obligations to the Prepetition Lender under the Prepetition Loan Agreement were and are guaranteed, in part, by Gerald Capizzi (the

"Guarantor" or "Capizzi"). As of the Petition Date, the aggregate amount of approximately $6.1 million was due and owing in respect of loans made by the Prepetition Lender to the Borrower pursuant to the Prepetition Financing Documents, inclusive of accrued and unpaid interest and fees and expenses incurred in connection therewith as provided for under the Prepetition Financing Documents (all of the foregoing, the "Prepetition Indebtedness"). For purposes of this Second Supplemental Final Order, each of the terms "Post-Petition Loans" (as hereinafter defined) and "Prepetition Indebtedness" shall include the principal of, and all interest, fees, expenses and other charges owing in respect of, such loans, indebtedness, or financial accommodations, including any reasonable attorneys', accountants', and financial advisors' fees that are chargeable or reimbursable under the relevant agreements relating to such loans or other indebtedness.

D. To secure the Prepetition Indebtedness, the Borrower granted to and for the benefit of the Prepetition Lender, pursuant to the Prepetition Financing Documents, security interests in substantially all accounts, chattel paper, instruments, documents, general intangibles, inventory, goods, equipment, investment property, deposit accounts, bank accounts, deposits and cash, including all additions, substitutions, replacements, products, and proceeds thereof (all of the foregoing collateral generally described above, and all proceeds thereof, shall be referred to herein collectively as the "Prepetition Collateral," and such liens shall be referred to herein as the "Prepetition Lender's Liens"). The Borrower, the Prepetition Lender, the Post-Petition Lender and the Committee acknowledge and agree that certain tooling, machinery and other equipment located at the Borrower's facilities may not be the property of the Borrower and may owned by third parties, including, without limitation, Motorola, Inc.

E. Pursuant to the terms of the Prepetition Financing Documents, the Prepetition Lender and the Borrower agreed that the Borrower would direct all of its account debtors to make all payments on the accounts directly to a post office box (the "Lock Box"), designated by and under the exclusive control of the Prepetition Lender, and the Borrower would establish an account (the "Lock Box Account") with the Prepetition Lender into which the Borrower would immediately deposit all payments received by the Borrower. The Prepetition Lender would then apply the whole or any part of such collections or proceeds against the liabilities as the Prepetition Lender determined at its discretion.

F. All cash of the Debtor, wherever located on the Petition Date, represented either proceeds of loans from the Prepetition Lender to the Debtor or proceeds of Prepetition Collateral. Pursuant to the Prepetition Financing Documents, the Prepetition Lender has a first, valid and perfected security interest in and lien on all cash of the Debtor, including but not limited to those funds held in the Lock Box Account on the Petition Date, and these funds constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.

G. The Prepetition Lender's Liens constitute valid, binding, enforceable, and perfected first-priority liens subject only to liens described in or otherwise permitted by the Prepetition Loan Agreement, and are not subject to avoidance or subordination (except insofar as such liens are subordinated to certain liens permitted by the Prepetition Loan Agreement that are valid, binding, enforceable and in existence on the Petition Date and the "Carve-Out" (as hereinafter defined) in accordance with the provisions of this Second Supplemental Final Order) pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Prepetition Indebtedness constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from

Bankruptcy Code section 362); no offsets, defenses, or counterclaims to the Prepetition Indebtedness exist; and no portion of the Prepetition Indebtedness is subject to avoidance or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

H. An immediate and critical need exists for the Debtor to obtain funds in order to continue the operation of its business. Without such funds, the Debtor will not be able to pay its payroll and other direct operating expenses and obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate, creditors, customers and employees. At this time, the Debtor's ability to finance its operations and the availability to it of sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations are vital to the confidence of the Debtor's vendors and suppliers of other goods and services, to its customers and to the preservation and maintenance of the going concern value of the Debtor's estate. The Debtor is unable to obtain the required funds in the form of unsecured credit or unsecured debt allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to sections 364(a) or (b) of the Bankruptcy Code, unsecured debt having the priority afforded by section 364(c)(1) or debt secured as described in sections 364(c)(2) or (3), except as set forth herein.

I. Substantially all of the Debtor's assets are subject to the Prepetition Lender's Liens. The Prepetition Lender has objected to any further use of the Prepetition Collateral by the Debtor, except under the terms of this Second Supplemental Final Order, including, without limitation, the payment to the Post-Petition Lender by the Debtor of a nonrefundable financing fee in the amount of $7,500 per month (November 2006, December 2006 and January 2007), which fee shall be immediately fully-earned and payable on the first

business day of each month (as set forth in the Budget), until the indefeasible payment in full in cash of the Post-Petition Loans and the Prepetition Indebtedness.

J.        The Prepetition Lender has indicated a willingness to consent and agree to the Debtor's entering into the financing arrangements contemplated by this Second Supplemental Final Order, and the Post-Petition Lender is willing to provide the additional financing contemplated herein, all subject to the conditions set forth herein and in the Prepetition Financing Documents (as amended hereby and subject to the terms hereof) and the provisions of this Second Supplemental Final Order assuring that the Post-Petition Liens and the various claims, superpriority claims and other protections granted pursuant to this Second Supplemental Final Order will not be affected by any subsequent reversal or modification of this Second Supplemental Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated herein. The Post-Petition Lender and the Prepetition Lender have acted in good faith in consenting to and in agreeing to provide the post-petition financing contemplated by this Second Supplemental Final Order. The reliance of the Post-Petition Lender and the Prepetition Lender on the assurances referred to above is in good faith.

K.        Pursuant to the Bankruptcy Code and in light of the foregoing, the Debtor is required to provide adequate protection to the Prepetition Lender against any diminution in value of the Prepetition Collateral from and after the Petition Date. The treatment requested by the Debtor for the Prepetition Lender and provided by this Second Supplemental Final Order will minimize disputes and litigation over collateral values, priming, use of cash collateral, and the need to segregate the Prepetition Collateral and the proceeds thereof from the "Post-Petition Collateral" (as hereinafter defined) and the proceeds thereof.

L. Notice of the hearing on the Motion and this Second Supplemental Final Order has been provided (by hand, telecopy, overnight mail or courier) to: (a) counsel for the Committee; (b) the Office of the United States Trustee; (c) counsel for the Prepetition Lender; (d) all parties known to the Debtor to have liens on or security interests in any of the Debtor's assets; (e) the Internal Revenue Service; and (f) all parties who have timely filed requests for notice under Bankruptcy Rule 2002. Such notice constitutes sufficient notice under Bankruptcy Rule 4001 and no other notice need be given.

M. Good cause has been shown for the entry of this Second Supplemental Final Order. Among other things, entry of this Second Supplemental Final Order will minimize disruption of the Debtor's business and operations and permit it to meet payroll and other operating expenses, obtain needed supplies and retain customer and supplier confidence by demonstrating an ability to maintain normal operations. The financing arrangement authorized hereunder is vital to avoid immediate and irreparable harm to the Debtor's estate. Consummation of such financing therefore is in the best interests of the Debtor's estate.

N. The financing and adequate protection arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtor, the Post-Petition Lender, and the Prepetition Lender. The terms of such financing and adequate protection arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration. As such, the Debtor, the Prepetition Lender and the Post-Petition Lender are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.        The Debtor be, and hereby is, authorized to borrow money pursuant to the terms of this Second Supplemental Final Order and the provisions of the Prepetition Financing Documents (as the Prepetition Financing Documents may be amended (with notice to the Committee and an opportunity for the Committee to object, which opportunity shall be not less than three (3) business days in the case of any material modifications) to memorialize the proposed additional financing and as otherwise set forth herein) (the "Post-Petition Loans") and perform its obligations hereunder and thereunder, solely in accordance with, and subject to, the terms of this Second Supplemental Final Order, in compliance with and for the purposes of funding those expenses set forth in the budget attached hereto as Exhibit A (as may be supplemented (with notice to the Committee and an opportunity for the Committee to object, which opportunity shall be not less than three (3) business days in the case of any material modifications) from time to time, the "Budget"); provided, however, no advances will be made by the Post-Petition Lender unless and until the Guarantor duly executes this Order acknowledging, consenting and agreeing to the terms of this Order and reaffirming his guarantee of the obligations and liabilities owing the Prepetition Lender (and the Post-Petition Lender) by the Debtor.    The Debtor shall be authorized to borrow funds pursuant to this Second Supplemental Final Order: (a) in the amounts set forth in the Budget (after taking the "Variance" (hereinafter defined) into account), and (b) until the aggregate of the Prepetition Indebtedness and the Post-Petition Loans reaches $4,000,000 (the "Loan Limit"); provided, however, that, with respect to the revolving loan sublimits under the Prepetition Loan Agreement, Eligible Inventory (as defined in the Prepetition Loan Agreement) shall be reduced to up to the lesser of (x) up to fifty percent (50%) of the lower of cost or market value of Borrower's Eligible Inventory or (y) Six Hundred Fifty Thousand and no/100 Dollars ($650,000.00).    The

determination of compliance with the Budget shall be made on a week-ending basis for each week until the occurrence of a Termination Event (hereinafter defined). Notwithstanding the foregoing, the Debtor shall be deemed to be in compliance with the Budget so long as its total cash disbursements, on a rolling four-week basis, are less than 110% of the amount provided for in the Budget for each respective four-week period and so long as its collections and sales, on a rolling four-week basis, are more than ninety percent (90%) of the amounts provided for in the Budget for each respective four-week period (collectively, the "Variance"). The Debtor is authorized to enter into such non-material modifications and amendments to the Budget without further Court order as may be agreed upon in writing by the Debtor and the Post-Petition Lender (with notice to the Committee and an opportunity for the Committee to object). Notwithstanding the provisions of the Prepetition Financing Documents relating to accrual and payment of interest, the Post-Petition Loans shall accrue interest on the outstanding principal amount thereof at a rate equal to the "Prime Rate" announced from time-to-time by the Post-Petition Lender, plus three percent (3.0%). Notwithstanding any other provision of this Second Supplemental Final Order, the Post-Petition Lender shall not have any obligation or commitment to make Post-Petition Loans pursuant to this Second Supplemental Final Order until the conditions precedent provided for herein have been satisfied.

     2.     From and after the date hereof (the "Effective Date") until: (a) the indefeasible payment in full in cash of the Post-Petition Loans and the Prepetition Indebtedness; and (b) the termination of any commitments or obligations under this Second Supplemental Final Order, the Debtor is hereby authorized and directed to remit, and shall remit to the Post-Petition Lender immediately upon the Debtor's receipt thereof, or otherwise in accordance with the Debtor's current practices, all "cash collateral" (as defined in Bankruptcy Code section 363(a))

in its possession or control arising from, or constituting proceeds of, the Prepetition Collateral or the Post-Petition Collateral, including all funds contained in the Lock Box Account on the Petition Date (collectively, the "Cash Collateral").    Cash Collateral remitted (or deemed remitted) to the Post-Petition Lender shall be applied as and to the extent specified in paragraph 3 hereof.  For purposes of this Second Supplemental Final Order, "proceeds" of any collateral shall mean proceeds (as defined in the Uniform Commercial Code) of such collateral as well as: (x) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to the Debtor from time to time with respect to such collateral; (y) any and all payments (in any form whatsoever) made or due and payable to the Debtor in connection with any requisition, confiscation, condemnation, seizure or forfeiture of all or any part of such collateral by any governmental body, authority, bureau or agency (or any person under color of governmental authority); and (z) other payments, dividends, interest or other distributions on or in respect of any of such collateral.

      3.     (a)     Proceeds or payments of Prepetition Collateral and Cash Collateral relating to Prepetition Collateral remitted or deemed remitted to the Post-Petition Lender in accordance with paragraph 2 hereof shall be applied by the Post-Petition Lender as follows:

      (i)     first, to payment of the "term" portion of the Prepetition Indebtedness consisting of accrued interest, costs and expenses;

      (ii)     next, to any portion of the "term" portion of the Prepetition Indebtedness consisting of principal;

      (iii)     next, to accrued, unpaid interest on the Post-Petition Loans; and

      (iv)     last, to any other outstanding amounts of Post-Petition Loans, including costs, expenses and principal.

If the source of any proceeds or payments is not clearly identifiable as attributable to Prepetition

Collateral or Post-Petition Collateral, such proceeds or payments shall be deemed to be proceeds

of Prepetition Collateral.  To the extent the Court enters a final order finding that the Prepetition

Lender is undersecured, all interest and fee payments with respect to Pre-Petition Indebtedness

shall be applied to the partial satisfaction of the principal amount of such Pre-Petition

Indebtedness to the extent the Prepetition Lender is undersecured.

        (b)      Proceeds or payments of Post-Petition Collateral and Cash

Collateral relating to Post-Petition Collateral remitted or deemed remitted to the Post-Petition

Lender in accordance with Paragraph 2 hereof shall be applied by the Post-Petition Lender as

follows:

        (i)      first, to payment of the "term" portion of the Prepetition

Indebtedness consisting of principal;

        (ii)     next, to any portion of the "term" portion of the Prepetition

Indebtedness consisting of accrued and accruing interest, costs and

expenses;

        (iii)    next, to any portion of the Post-Petition Loans consisting of

accrued interest, and post-petition costs and expenses; and

        (iv)    last, to outstanding principal of the Post-Petition Loans.

        4.      Any and all payments or proceeds remitted, or deemed to be remitted, to

the Post-Petition Lender pursuant to the provisions of paragraph 2 of this Second Supplemental

Final Order (or any similar provisions of the Prepetition Financing Documents) shall be received,

or deemed received, by the Post-Petition Lender free and clear of any claim, charge, assessment

or other liability, all of which are waived by the Debtor; provided, that nothing in this Second

Supplemental Final Order shall be deemed to preclude any such claim or charge arising out of or

based on section 506(c) of the Bankruptcy Code, except as provided in this Paragraph 4, below.

In consideration of any retainers paid thereto prior to the Petition Date (the "Retainers") and the

Post-Petition Lender's agreement to make funds available pursuant to the Budget to satisfy

certain accrued and unpaid fees and expenses incurred by restructuring professionals in

connection with this proceeding as of the Termination Date (hereinafter defined) and as set forth

in the Budget, each of Shaw Gussis Fishman Glantz Wolfson & Towbin LLC, as counsel for the

Debtor, Laner, Muchin, Dombrow, Becker Levin & Tominberg, Ltd., as special labor counsel for

the Debtor, RSM McGladrey Financial, as a financial advisor to the Debtor, and CM&D Capital

Advisors LLC, as a financial advisor for the Debtor, by execution of this Second Supplemental

Final Order, hereby waives and releases its rights to request that the Debtor or any subsequently

appointed trustee assert on its behalf a claim under section 506(c) of the Bankruptcy Code

against the Prepetition Collateral or the Post-Petition Collateral.

5.        As security for all loans, advances and any other indebtedness or

obligations, contingent or absolute, which may now or from time to time hereafter be owing by

the Debtor to the Post-Petition Lender (all such loans, advances, indebtedness or obligations are

the "Post-Petition Loans"), the Post-Petition Lender is hereby granted valid, binding, enforceable

and perfected liens (the "Post-Petition Liens") in all currently-owned or hereafter-acquired

property and assets of the Debtor of any kind or nature, whether real or personal, tangible or

intangible, wherever located, now owned or hereafter acquired or arising, and all proceeds,

products, rents and profits thereof, including, without limitation, all cash, goods, accounts,

inventory, cash-in-advance deposits, general intangibles, deposit accounts, real estate,

machinery, equipment, vehicles, trademarks, trade names, licenses, claims and causes of action,

rights to payment including tax refund claims, insurance proceeds, and tort claims, and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the "Post-Petition Collateral"; provided, however, that the Post-Petition Collateral shall exclude any claims or litigation rights pursuant to sections 544, 547, 548, 549, and 550 of the Bankruptcy Code and any proceeds of such claims or litigation rights ("Avoidance Actions")), in each case subject only to: (a) the Carve-Out; and (b) any liens or security interests existing on or in the Post-Petition Collateral that are valid, binding, enforceable, and perfected liens on the Petition Date that are not otherwise subject to avoidance or subordination. Notwithstanding any other provision of this Second Supplemental Final Order, in no event shall the Prepetition Lender's Liens, the Post-Petition Liens or the Adequate Protection Liens grant any interest in, claim to, attach to, impair or in any way affect any property of third parties which is not property of the estate and that may be located at the Borrower's facilities, including, without limitation, parties such as Motorola, Inc.

6.      As adequate protection, the Prepetition Lender is hereby granted valid, binding, enforceable and perfected liens (the "Adequate Protection Liens") in all Post-Petition Collateral to secure an amount of Prepetition Indebtedness (the "Adequate Protection Obligations") equal to the sum of the aggregate amount of diminution in value of the Prepetition Collateral, whether by depreciation, use, sale, loss decline in market price, or otherwise. The Adequate Protection Liens are subject only to: (a) the Post-Petition Liens; (b) the Carve-Out; and (c) any liens or security interests existing on or in the Post-Petition Collateral that are valid, binding, enforceable, and perfected liens on the Petition Date that are not otherwise subject to avoidance or subordination.

7. Except as expressly set forth in this Second Supplemental Final Order, (a) the liens and security interests granted in this Second Supplemental Final Order to secure the Post-Petition Loans shall not be subject to any lien which is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code; and (b) the liens and security interests granted in this Second Supplemental Final Order shall not be subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. As used in this Second Supplemental Final Order, "Carve-Out" means: (a) the unpaid fees of the clerk of the Bankruptcy Court or District Court, as applicable, and of the United States Trustee pursuant to 28 U.S.C. §§ 1930(a) and (b); (b) the aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to Court order by the Debtor and incurred prior to the occurrence of a Termination Event in the amounts set forth in the Budget; and (c) the aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to Court order by the Committee in an amount not to exceed the Committee Fee Cap (as defined in the Final Financing Order), provided that, upon and after the occurrence of a Termination Event (as hereinafter defined), such fees and expenses of the Committee shall not exceed $10,000 (and the aggregate of all fees and expenses shall not in any event exceed the Committee Fee Cap (as defined in the Final Financing Order) for purposes of the Carve-Out); provided that the Carve-Out shall not include the fees and expenses, if any, of any such professional persons incurred, directly or indirectly, in respect of, arising from or relating to: (x) the prosecution of (but not the investigation of) any action contesting the validity, priority or extent of the claims or liens asserted by the Prepetition Lender; (y) any action for preferences, fraudulent conveyances, and other avoidance power claims against the Prepetition Lender; or (z)

any other cause of action of the Debtor or its estate against the Prepetition Lender or the Post-Petition Lender; and provided, further, that the Carve-Out shall only be available to pay the fees and expenses set forth in (b) and (c), above, to the extent unencumbered funds are not otherwise immediately available. So long as no Default or Event of Default shall have occurred and be continuing hereunder, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable; provided, however, that nothing contained in this sentence shall be deemed to impair the payment of unpaid amounts due in accordance with subsections (a) and (b) of the preceding sentence.

8. In addition, (a) the Post-Petition Loans shall have priority in accordance with the provisions of section 364(c)(1) of the Bankruptcy Code over all administrative expenses of the kind specified in sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b) or 546(c) of the Bankruptcy Code ("Superpriority") payable from all assets of the Debtor other than Avoidance Actions, subject only to the Carve-Out, and (b) the Adequate Protection Obligations shall have Superpriority payable from all assets of the Debtor other than Avoidance Actions, subject only to the Carve-Out and the aforementioned priorities of the Post-Petition Loans. Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in the Debtor's Chapter 11 Case, in any conversion of the Debtor's Chapter 11 Case to a proceeding pursuant to chapter 7 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other Superpriority claims, are or will be prior to or on a parity with the claims of the Prepetition Lender or Post-Petition Lender against the Debtor arising, as applicable, out of the Post-Petition Loans or Adequate Protection Obligations or any

provision of this Second Supplemental Final Order or with the liens and security interests granted herein on, in and to the Post-Petition Collateral.

9. The Post-Petition Loans shall become due and payable, without notice or demand, on the Termination Date, as provided herein unless the Post-Petition Lender issues a Non-Termination Notice (as hereinafter defined). From and after the Termination Date, the Debtor shall have no authority to use Prepetition Collateral (including Cash Collateral) of the Prepetition Lender or Post-Petition Collateral of the Post-Petition Lender.

10. From and after the Effective Date, the proceeds of the Post-Petition Loans, the Prepetition Collateral, and the Post-Petition Collateral shall not, directly or indirectly, be used to pay expenses of the Debtor or otherwise disbursed except for: (a) those expenses, payments, and/or disbursements that are expressly set forth in the Budget or otherwise permitted under this Second Supplemental Final Order; (b) compensation and reimbursement of expenses allowed by this Court to attorneys, accountants, investment bankers, financial advisors or other professional persons retained by the Debtor and the Committee as provided for in this Second Supplemental Final Order; and (c) amounts due to the Prepetition Lender and the Post-Petition Lender, and their accountants, attorneys or other professionals hereunder or under the Prepetition Loan Agreement (any such amounts paid to the Prepetition Lender and the Post-Petition Lender in excess of the amounts set forth in the Budget shall not constitute a default under this Order or an Event of Default under the Prepetition Loan Documents); provided that the foregoing shall not be construed as consent to the allowance of any of the amounts referred to in the preceding clauses (a) or (b) and shall not affect the right of the Prepetition Lender or the Post-Petition Lender to object to the allowance and payment of such amounts. No consent by the Post-Petition Lender or the Prepetition Lender to any administrative claims, including fees and expenses of

professionals, sought to be assessed against or attributed to the Prepetition Lender or the Post-Petition Lender or their respective interests in the Prepetition Collateral or the Post-Petition Collateral pursuant to the provisions of section 506(c) of the Bankruptcy Code or otherwise by, through or on behalf of the Debtor, shall be implied from any action, inaction or acquiescence by the Prepetition Lender or the Post-Petition Lender or otherwise. Except as set forth in the first sentence of this paragraph 10, neither the Prepetition Lender nor the Post-Petition Lender has consented or agreed to the use of the proceeds of the Post-Petition Loans, Prepetition Collateral or the Post-Petition Collateral.

11. The automatic stay extant under Bankruptcy Code section 362(a) shall be, and it hereby is, modified to the extent necessary to permit the Prepetition Lender and the Post-Petition Lender to retrieve, collect and apply payments and proceeds in respect of the Prepetition Collateral and the Post-Petition Collateral in accordance with the terms and provisions of this Second Supplemental Final Order.

12. Notwithstanding anything herein, unless the Post-Petition Lender issues a notice to the contrary (a "Non-Termination Notice") to the Debtor, the Committee and the Office of the United States Trustee, the Debtor shall no longer, pursuant to this Second Supplemental Final Order or otherwise, be authorized to borrow funds hereunder or to use Cash Collateral or any proceeds of the Post-Petition Loans already received (and any obligation of the Post-Petition Lender to make loans or advances hereunder shall be terminated) upon the earliest to occur of any of the following events (any such event shall be referred to as a "Termination Event" and the date of any such event for which there is not a Non-Termination Notice shall be referred to as the "Termination Date"):

(a)     Any "Event of Default" as defined in the Prepetition Financing Documents, after taking into account applicable cure periods, except for any default relating to paragraph 15(g) of the Prepetition Loan Agreement;

(b)     The total amount of the Prepetition Indebtedness plus the Post-Petition Loans exceeding the Loan Limit;

(c)     The Debtor's failure to comply with the terms and conditions of this Second Supplemental Final Order (including, without limitation, the Debtor's failure to comply with the Budget, subject to the Variance, as set forth in paragraph 1 above).

(d)     The Debtor's failure to complete the sale of its business as a going concern (the "Sale") in accordance with the following schedule: (i) the Debtor shall receive final asset purchase agreements from prospective purchasers on or before November 15, 2006 (copies of which the Debtor shall provide to the Post-Petition Lender); and (ii) the Debtor shall file a motion to sell substantially all of its assets, in form and substance acceptable to the Post-Petition Lender, on or before November 17, 2006.

(e)     The Maturity Date (as hereinafter defined).

13.     All obligations and commitments of the Prepetition Lender and the Post-Petition Lender hereunder shall terminate at the earliest of the following (the "Maturity Date"): (a) January 31, 2007;  (b) the entry of an order pursuant to section 363 of the Bankruptcy Code approving the sale of substantially all of the Debtor's assets; (c) the effective date of any plan of reorganization;  (d) conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code;  (e) appointment of a trustee or examiner in the Chapter 11 Case; or (f) dismissal of the Chapter 11 Case.

14.     Subject to the applicable provisions of paragraph 17, five (5) business days after written notice to counsel for the Debtor, counsel for the Committee and the Office of the United States Trustee of the occurrence of a Termination Event for which there is not a Non-Termination Notice, the Prepetition Lender or the Post-Petition Lender shall have the right, without further order of court or notice to the Debtor, to exercise the rights granted them hereunder as to all or such part of the Prepetition Collateral or Post-Petition Collateral, as the Prepetition Lender or the Post-Petition Lender, in their sole discretion, shall elect, including the right to take possession of and sell the Prepetition Collateral or Post-Petition Collateral in accordance with the terms of the Uniform Commercial Code to satisfy the Prepetition Indebtedness and the Post-Petition Loans.  For such purpose, the automatic stay of section 362 of the Bankruptcy Code is hereby modified and vacated as against the Prepetition Lender and the Post-Petition Lender.

15.     Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the rights, remedies, benefits and protections provided to the Prepetition Lender and Post-Petition Lender under this Second Supplemental Final Order shall survive the Termination Date.  Upon the Termination Date, the principal of and accrued interest and fees and all other amounts owed to the Prepetition Lender and the Post-Petition Lender hereunder or under the Prepetition Financing Documents shall be immediately due and payable and the Prepetition Lender and the Post-Petition Lender shall have all other rights and remedies provided in the Prepetition Loan Agreement and this Second Supplemental Final Order. Notwithstanding anything herein, no amounts under the Carve-Out, or the proceeds of the Post-Petition Loans, or the proceeds of the Prepetition Collateral or the Post-Petition Collateral shall be used for the purpose of: (a) objecting to or contesting in any manner, or in raising any

defenses to, the validity, extent, perfection, priority, or enforceability of the Prepetition Indebtedness or any liens or security interests with respect thereto, or any other rights or interest of the Prepetition Lender or the Post-Petition Lender or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code against the Prepetition Lender or Post-Petition Lender; (b) preventing, hindering, or delaying the Post-Petition Lender's enforcement or realization upon any of the Post-Petition Collateral; (c) using Cash Collateral or selling any Collateral except as specifically permitted in this Second Supplemental Final Order (including the Carve-Out) or by order of the Bankruptcy Court; (d) incurring indebtedness except as permitted by this Supplemental Final Order; or (e) modifying the Post-Petition Lender's rights hereunder.

16.     The Investigation Periods (as defined in the Final Financing Order) for a party in interest with standing to file: (a) an adversary proceeding challenging the amount, validity, enforceability, perfection or priority of the Prepetition Indebtedness or the Prepetition Lender's Liens on the Prepetition Collateral in respect thereof or (b) an adversary proceeding (subject to the limitation set forth in the last sentence of decretal paragraph 15) otherwise asserting any claims or causes of action against the Prepetition Lender on behalf of the Debtor's estate have expired. Therefore, (i) the findings and stipulations contained in paragraphs F, G, H, I and J above, and the repayment of the Prepetition Indebtedness contemplated by paragraphs 2 and 3 above, shall be and hereby are binding upon all parties in interest, including without limitation, the Debtor, the Committee, and any other statutory committees appointed in the Chapter 11 Case; (ii) the repayment of the Prepetition Indebtedness shall be and hereby is deemed final and indefeasible, not subject to subordination and otherwise unavoidable; (iii) the Prepetition Indebtedness shall constitute allowed claims, not subject to subordination and

otherwise unavoidable, for all purposes in the Chapter 11 Case and any subsequent chapter 7 case; (iv) the Prepetition Lender's Liens on the Prepetition Collateral shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable; and (v) the Prepetition Lender, the Prepetition Indebtedness, the Prepetition Loan Agreement and the Prepetition Lender's Liens on the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including without limitation, any successor thereto. Subject only to the foregoing provisions of this paragraph 16, the Prepetition Lender and the Post-Petition Lender shall be deemed released of all claims, rights, causes of action or defenses by, and all liabilities owing to, the Debtor, the Committee, all of the Debtor's creditors, and any subsequently appointed trustee arising out of or based on any facts or circumstances occurring prior to the date hereof. Nothing in this Second Supplemental Final Order or the Final Financing Order shall affect the Debtor's estate's right to assert claims or file causes of action against Capizzi and his successors and assigns. The estate's rights with respect to pursuing any and all claims and causes of action against Capizzi and his successors and assigns are hereby expressly preserved.

17. If it shall be necessary for the Prepetition Lender or the Post-Petition Lender, at any time, to exercise any of their respective rights and remedies hereunder or under applicable law in order to effect repayment of the Post-Petition Loans or the Adequate Protection Obligations, or to receive any amounts or remittances due hereunder, including without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral or the Post-Petition Collateral, the Prepetition Lender and the Post-Petition Lender shall, unless an order has been entered by the Court to the contrary within the three-day notice period provided below,

have the right without any further action or approval of this Court to exercise such rights and remedies as to all or such part of the Prepetition Collateral and the Post-Petition Collateral as the Prepetition Lender or the Post-Petition Lender shall, in their sole discretion, elect, subject to the Prepetition Lender or the Post-Petition Lender, as applicable, having provided the Debtor, the Committee and any other official committee that may be appointed in the Chapter 11 Case with at least three (3) business days' advance notice. The Prepetition Lender and the Post-Petition Lender shall be entitled to apply the payments or proceeds of the Prepetition Collateral and the Post-Petition Collateral in accordance with the provisions of this Second Supplemental Final Order, and in no event shall the Prepetition Lender or the Post-Petition Lender be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Post-Petition Collateral or otherwise.

18.       Except as provided herein, the Debtor shall be enjoined and prohibited from at any time during the Chapter 11 Case granting liens on and security interests in the Prepetition Collateral, the Post-Petition Collateral or any portion thereof to any other parties pursuant to section 364 of the Bankruptcy Code or otherwise, which liens and security interests, as the case may be, are senior, or on a parity with, or junior to the liens and security interests of the Prepetition Lender or the Post-Petition Lender therein (excluding any liens resulting from Court-approved reclamation claims). Except in accordance with the terms of this Second Supplemental Final Order, the Debtor shall be enjoined and prohibited from at any time (a) using the Prepetition Lender's Cash Collateral, (b) using the Post-Petition Collateral, and (c) applying to the Bankruptcy Court for an order authorizing the use of the Prepetition Lender's or the Post-Petition Lender's Cash Collateral.

19. The Debtor shall execute and deliver to the Prepetition Lender and the Post-Petition Lender all such agreements, financing statements, instruments and other documents as the Prepetition Lender and the Post-Petition Lender may reasonably request to evidence, confirm, validate or perfect the liens and security interests granted pursuant hereto.

20. The Debtor shall permit representatives, agents and/or employees of the Prepetition Lender and the Post-Petition Lender to have reasonable access to its premises and its records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

21. As part of the Debtor's obligations hereunder, and as consideration for the agreement of the Post-Petition Lender to provide the Post-Petition Loans to the Debtor, the Debtor shall promptly reimburse the Post-Petition Lender for its reasonable costs, fees (including reasonable attorneys' fees), charges and expenses to the extent provided for in the Prepetition Loan Agreement, as the case may be; provided, however, that any such reimbursable amounts paid to the Prepetition Lender and the Post-Petition Lender in excess of the amounts set forth in the Budget shall not constitute a default under this Order or an Event of Default under the Prepetition Loan Documents. Upon payment of such fees and expenses, such fees and expenses shall be deemed fully earned, indefeasibly paid, and non-refundable. All such costs, fees, charges and expenses shall be part of the Post-Petition Loans and shall have the same rights, status and priority as the Post-Petition Loans. The Post-Petition Liens and all other liens and security interests granted herein shall, pursuant to this Second Supplemental Final Order, be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the Prepetition Lender or Post-Petition Lender shall,

in their sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Second Supplemental Final Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to effect such filings.

22. Through the date of this Second Supplemental Final Order, in making decisions to advance moneys or extend financial accommodations of any nature under the Final Financing Order or the Prepetition Financing Documents, in administering the Debtor's use of Cash Collateral or any advances, loans, or financial accommodations of any sort under the Interim Order or the Prepetition Financing Documents, or in taking any other action related to or in connection with any of the foregoing, the Post-Petition Lender shall have no liability to any third party, and shall not be deemed to be in control of the operations of the Debtor, an "employer" of any of the Debtor's employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtor.

23. The provisions of this Second Supplemental Final Order shall be binding upon and inure to the benefit of the Prepetition Lender, the Post-Petition Lender, the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor).

24. Based on the findings set forth in paragraphs M and N of this Second Supplemental Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the post-petition financing arrangement contemplated by this Second Supplemental Final Order, in the event any or all of the provisions of this Second Supplemental

Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any lien, security interest or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the Prepetition Lender or the Post-Petition Lender hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Second Supplemental Final Order, and the Prepetition Lender or the Post-Petition Lender, as the case may be, shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein, with respect to any such claim.

25.     The Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements, mortgages and financing statements) and to pay fees and expenses that may be required or necessary for the Debtor's performance hereunder, including, without limitation: (a) the execution of any post-petition financing documents, and (b) the payment of the fees and other expenses described herein or in such post-petition financing documents as such become due, including, without limitation, agent fees, commitment fees, letter of credit fees and facility fees and reasonable attorneys', financial advisers' and accountants' fees and disbursements.

26.     Notwithstanding anything to the contrary herein, the entry of this Second Supplemental Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of the Prepetition Lender or the Post-Petition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Prepetition Lender and the Post-Petition Lender to (i) request additional adequate protection of their interests in the Prepetition Collateral or the Post-Petition

Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, (ii) request conversion of the Chapter 11 Case to chapter 7, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Prepetition Lender or the Post-Petition Lender.

27. This Second Supplemental Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Supplemental Final Order.

Dated: ~~November~~ __, 2006.

ENTERED:

UNITED STATES BANKRUPTCY JUDGE

10/31/06

**APPROVED AS TO FORM AND SUBSTANCE:**

KL INDUSTRIES, INC.

By: ______________________
One Of Its Attorneys

Steven B. Towbin (IL#2848546)
Peter J. Roberts (#6239025)
Shaw Gussis Fishman Glantz Wolfson & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, Illinois 60610

LASALLE BANK NATIONAL ASSOCIATION

By: ______________________
One Of Its Attorneys

John Sieger (IL #6240033)
Peter Young (IL #6278765)
Katten Muchin Rosenman LLP
525 West Monroe Street
Chicago, IL 60661
(312) 902-5294
john.sieger@kattenlaw.com
peter.young@kattenlaw.com

Agreed with respect to the § 506(c) waiver
contained in paragraph 4 hereof only:

SHAW GUSSIS FISHMAN GLANTZ WOLFSON & TOWBIN LLC

By: ______________________
Steven B. Towbin
[Member]

RSM McGLADREY FINANCIAL

By: ______________________
Scott Peltz
[Managing Director]

CM&D CAPITAL ADVISORS LLC

By: ______________________
James S. Mahoney
[Director]

LANER, MUCHIN, DOMBROW, BECKER, LEVIN & TOMINBERG, LTD.

By: ______________________
Anthony E. Dombrow
[Partner]

CM&D CAPITAL ADVISORS LLC

By: ______________________________
James S. Mahoney
[Director]

LANER, MUCHIN, DOMBROW, BECKER, LEVIN & TOMINBERG, LTD.

By: ______________________________
~~Anthony E. Dombrow~~ JEFFREY P. CARREN
[Partner]

The undersigned hereby acknowledges, consents and agrees to the terms of this Second Supplemental Final Order and hereby reaffirms his guarantee of the obligations and liabilities owing LaSalle Bank National Association by the captioned Debtor, including obligations owing to the Post-Petition Lender relating to the Post-Petition Loans.

Gerald Capizzi

# EXHIBIT A

*KL Industries, Inc.*
*Thirteen week Budget Ending February 2, 2007*

| Direct Manufacturing Costs | WEEK BEGINNING 11/6/2006 | WEEK BEGINNING 11/13/2006 | WEEK BEGINNING 11/20/2006 | WEEK BEGINNING 11/27/2006 | NOVEMBER TOTAL | WEEK BEGINNING 12/4/2006 | WEEK BEGINNING 12/11/2006 | WEEK BEGINNING 12/18/2006 | WEEK BEGINNING 12/25/2006 | DECEMBER TOTAL | WEEK BEGINNING 1/1/2007 | WEEK BEGINNING 1/8/2007 | WEEK BEGINNING 1/15/2007 | WEEK BEGINNING 1/22/2007 | WEEK BEGINNING 1/29/2007 | JANUARY TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| METALS USA (ANNETCO) (MI) | 85,000 | 95,000 | 55,000 | 50,000 | 285,000 | 75,000 | 75,000 | 50,000 | | 200,000 | 85,000 | 85,000 | 90,000 | 100,000 | 80,000 | 440,000 | 925,000 |
| INDUSTRIAL STEEL & WIRE | 40,000 | 40,000 | 30,000 | 40,000 | 150,000 | 40,000 | 40,000 | 20,000 | | 100,000 | 35,000 | 40,000 | 40,000 | 40,000 | 40,000 | 195,000 | 445,000 |
| GIBBS WIRE AND STEEL | 25,000 | 25,000 | 15,000 | 25,000 | 90,000 | 25,000 | 25,000 | 15,000 | | 65,000 | 25,000 | 15,000 | 20,000 | 15,000 | 20,000 | 95,000 | 250,000 |
| TANDEM METALS | 20,000 | 20,000 | 10,000 | 20,000 | 70,000 | 20,000 | 20,000 | 10,000 | | 50,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 100,000 | 220,000 |
| MARC STEEL INC | 10,000 | 10,000 | 5,000 | 10,000 | 35,000 | 10,000 | 10,000 | 5,000 | | 25,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 | 110,000 |
| MILLARD WIRE | 10,000 | 10,000 | 5,000 | 10,000 | 35,000 | 10,000 | 10,000 | 5,000 | | 25,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 | 110,000 |
| P J SPRING (SEE VN 3802) | 7,500 | 7,500 | 5,000 | 7,500 | 27,500 | 7,500 | 7,500 | 5,000 | | 20,000 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 37,500 | 85,000 |
| DYNAMIC COATINGS | 5,000 | 5,000 | 3,000 | 5,000 | 18,000 | 5,000 | 5,000 | 4,000 | | 14,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 | 57,000 |
| K & K SCREW PRODUCTS | 10,000 | | | 15,000 | 25,000 | | | 10,000 | | 10,000 | | 15,000 | | | | 15,000 | 50,000 |
| METRO SPRING | 4,000 | 4,000 | 3,000 | 4,000 | 15,000 | 4,000 | 4,000 | 4,000 | | 12,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 20,000 | 47,000 |
| INTER WIRE MIDWEST | 5,000 | | 5,000 | | 10,000 | 5,000 | | 5,000 | | 10,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 | 45,000 |
| SUBURBAN IND TOOL | 9,000 | 2,000 | 1,000 | 2,000 | 14,000 | 9,000 | 2,000 | 1,000 | | 12,000 | 2,000 | 8,000 | 2,000 | 2,000 | 3,000 | 17,000 | 43,000 |
| BLOOWNEY | 3,000 | 3,000 | 3,000 | 3,000 | 12,000 | 3,000 | 3,000 | 3,000 | | 9,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 15,000 | 36,000 |
| STRAUB METAL | 7,500 | | | 7,500 | 15,000 | | | 5,000 | | 5,000 | | 7,500 | | | 7,500 | 15,000 | 35,000 |
| ULBRICH STAINLESS | | 10,000 | | | 10,000 | | 5,000 | | | 5,000 | | 10,000 | | | 10,000 | 20,000 | 35,000 |
| TINNERMAN | 3,000 | 3,000 | 1,500 | 3,000 | 10,500 | 3,000 | 3,000 | 2,000 | | 8,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 15,000 | 33,500 |
| RYAN METAL FINISHING CO | 3,000 | 3,000 | 1,500 | 3,000 | 10,500 | 3,000 | 3,000 | 1,500 | | 7,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 15,000 | 33,000 |
| DOLA | | | 10,000 | | 10,000 | | | 7,500 | | 7,500 | | | | 15,000 | | 15,000 | 32,500 |
| RADCLIFF WIRE | | | 7,500 | | 7,500 | | | 10,000 | | 10,000 | | | 15,000 | | | 15,000 | 32,500 |
| AMSTEK METAL | 5,000 | | 2,500 | | 7,500 | 5,000 | | 2,500 | | 7,500 | 5,000 | | 5,000 | | 5,000 | 15,000 | 30,000 |
| BULAW WELDING & ENGR | 2,500 | 2,500 | 2,500 | 2,500 | 10,000 | 2,500 | 2,500 | 2,500 | | 7,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 12,500 | 30,000 |
| GATTO INDUSTRIAL PLATERS | 2,500 | 2,500 | 1,500 | 2,500 | 9,000 | 2,500 | 2,500 | 2,200 | | 7,000 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 12,500 | 28,500 |
| HANSEL'S CUSTOM TECH | 1,250 | 1,250 | 800 | 1,250 | 4,550 | 7,250 | 1,250 | 1,250 | 1,250 | 11,000 | 7,250 | 1,250 | 1,250 | 1,250 | 1,250 | 12,250 | 27,800 |
| ATGI | | 5,000 | | 5,000 | 10,000 | | 5,000 | | | 5,000 | | 5,000 | | 5,000 | | 10,000 | 25,000 |
| ERICSON TOOL | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 | 2,000 | 2,000 | 2,000 | | 6,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 | 24,000 |
| CRW CORPORATION | 2,000 | 2,000 | 2,000 | 2,000 | 8,000 | 2,000 | 2,000 | 1,500 | | 5,500 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 | 23,500 |
| COOPER-STANDARD AUTO | 2,000 | 2,000 | 1,000 | 2,000 | 7,000 | 2,000 | 2,000 | 1,000 | | 5,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 | 22,000 |
| HUDAPAK | 1,500 | 1,500 | 1,500 | 1,500 | 6,000 | 1,500 | 1,500 | 1,500 | | 4,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 7,500 | 18,000 |
| METALS TECHNOLOGY CORP | 1,400 | 1,400 | 1,400 | 1,400 | 5,600 | 1,400 | 1,400 | 1,400 | | 4,200 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 7,000 | 16,800 |
| LEGGETT AND PLATT | | | 5,000 | | 5,000 | | | 2,500 | | 2,500 | | | 5,000 | | | 5,000 | 12,500 |
| R.C. INDUSTRIES-Chicago | 1,000 | 1,000 | 1,000 | 1,000 | 4,000 | 1,000 | 1,000 | 1,000 | | 3,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 | 12,000 |
| PERFECTION PLATING | 750 | 750 | 750 | 750 | 3,000 | 750 | 750 | 750 | | 2,250 | 750 | 750 | 750 | 750 | 750 | 3,750 | 9,000 |
| JOSE LEMUS | | 2,500 | | | 2,500 | | 2,500 | | | 2,500 | | 2,500 | | | | 2,500 | 7,500 |
| MULTITECH INDUSTRIES | | | | 3,500 | 3,500 | | | | | - | | | | | 3,500 | 3,500 | 7,000 |
| PERFORMANCE STAMPING | 1,000 | | 1,000 | | 2,000 | 1,000 | | 1,000 | | 2,000 | 1,000 | | 1,000 | | 1,000 | 3,000 | 7,000 |
| CONTACT METAL | | 2,000 | | | 2,000 | | 2,000 | | | 2,000 | | 2,000 | | | | 2,000 | 6,000 |
| D & N DEBURRING CO INC | 500 | 500 | 500 | 500 | 2,000 | 500 | 500 | 500 | | 1,500 | 500 | 500 | 500 | 500 | 500 | 2,500 | 6,000 |
| SUTCO METAL PROCESSING | | | 1,500 | | 1,500 | | | 1,500 | | 1,500 | | | 3,000 | | | 3,000 | 6,000 |
| SUTTON GARDEN | | 1,500 | | | 1,500 | | 1,500 | | | 1,500 | | 1,500 | | | 1,500 | 3,000 | 6,000 |
| SWD INC | 500 | 500 | 500 | 500 | 2,000 | 500 | 500 | 250 | | 1,250 | 500 | 500 | 500 | 500 | 500 | 2,500 | 5,750 |
| TRU-TONE | 500 | 500 | 500 | 500 | 2,000 | 500 | 500 | 250 | | 1,250 | 500 | 500 | 500 | 500 | 500 | 2,500 | 5,750 |
| ROCKFORD SPRING COMPANY | 750 | | 750 | | 1,500 | 750 | | 750 | | 1,500 | 750 | | 750 | | 750 | 2,250 | 5,250 |
| UNITED STATES BRASS | | | | | - | | | | | - | | | 5,000 | | | 5,000 | 5,000 |
| ADVANCE ENAMELERS | 1,000 | | | | 1,000 | | 1,000 | | | 1,000 | | 1,000 | | | 1,000 | 2,000 | 4,000 |
| ALL AMERICAN SPRING | | 1,000 | | | 1,000 | | 1,000 | | | 1,000 | | 1,000 | | | | 1,000 | 3,000 |
| BLACK INDUSTRIAL SUPPLY | | | | 1,000 | 1,000 | | | | | - | 1,000 | | | | 1,000 | 2,000 | 3,000 |
| C.P. SCREW | | | 1,000 | | 1,000 | | | 500 | | 500 | | | | 1,000 | | 1,000 | 2,500 |
| PRECISION METAL STAMPING | | | | | - | | | | | - | | | | | 2,500 | 2,500 | 2,500 |
| METALS ART FINISHING | | 250 | | 250 | 500 | | 250 | | | 250 | | 250 | | 250 | | 500 | 1,250 |
| ARCON RING | | | | | - | | | | | - | 1,000 | | | | | 1,000 | 1,000 |
| GROVE PLATING CO INC | | 200 | | 200 | 400 | | 200 | | | 200 | | 200 | | 200 | | 450 | 1,000 |
| BYRON LAMBERT | 300 | | 300 | | 600 | | | | | - | | | | 300 | | 300 | 900 |
| ***Total Direct Manufacturing Costs*** | 273,450 | 268,350 | 168,500 | 233,350 | 963,650 | 250,650 | 244,350 | 187,650 | 1,250 | 683,900 | 250,650 | 283,850 | 275,650 | 267,650 | 264,650 | 1,342,450 | 2,990,000 |

*KL Industries, Inc.*
*Thirteen week Budget Ending February 2, 2007*

| | WEEK BEGINNING 11/6/2006 | WEEK BEGINNING 11/13/2006 | WEEK BEGINNING 11/20/2006 | WEEK BEGINNING 11/27/2006 | NOVEMBER TOTAL | WEEK BEGINNING 12/4/2006 | WEEK BEGINNING 12/11/2006 | WEEK BEGINNING 12/18/2006 | WEEK BEGINNING 12/25/2006 | DECEMBER TOTAL | WEEK BEGINNING 1/1/2007 | WEEK BEGINNING 1/8/2007 | WEEK BEGINNING 1/15/2007 | WEEK BEGINNING 1/22/2007 | WEEK BEGINNING 1/29/2007 | JANUARY TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ***Freight Costs*** | | | | | | | | | | | | | | | | | |
| R + L CARRIERS | $ 1,750 | $ 1,750 | $ 1,000 | $ 1,750 | $ 6,250 | $ 1,750 | $ 1,750 | $ 1,250 | | $ 4,750 | $ 1,750 | $ 1,750 | $ 1,750 | $ 1,750 | $ 1,750 | $ 6,750 | $ 19,750 |
| EDENS EXPRESS | $ 2,000 | $ 2,000 | $ 1,000 | $ 2,000 | $ 7,000 | $ 2,000 | $ 2,000 | $ 1,000 | | $ 5,000 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 7,500 | $ 19,500 |
| CON-WAY CENTRAL EXPRESS | | | $ 1,000 | | $ 1,000 | | $ 1,000 | | | $ 1,000 | $ 1,000 | | | $ 1,000 | | $ 2,000 | $ 4,000 |
| FEDERAL EXPRESS | $ 300 | $ 300 | | $ 300 | $ 900 | $ 300 | $ 300 | $ 300 | | $ 900 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 1,500 | $ 3,300 |
| UNITED PARCEL SERVICE | $ 150 | $ 150 | | $ 150 | $ 450 | $ 150 | $ 150 | $ 150 | | $ 450 | $ 150 | $ 150 | $ 150 | $ 150 | $ 150 | $ 750 | $ 1,650 |
| USF HOLLAND | $ 200 | | $ 200 | | $ 400 | $ 200 | | $ 200 | | $ 400 | $ 200 | | $ 200 | | $ 200 | $ 600 | $ 1,450 |
| **Total Freight Costs** | $ 4,400 | $ 4,200 | $ 3,200 | $ 4,200 | $ 16,000 | $ 4,400 | $ 6,200 | $ 2,900 | $ - | $ 12,500 | $ 4,800 | $ 3,700 | $ 3,900 | $ 4,700 | $ 3,900 | $ 21,100 | $ 49,600 |
| ***Indirect Manufacturing Costs*** | | | | | | | | | | | | | | | | | |
| PRARIE DOG PARTNERSHIP | $ 45,511 | | | | $ 45,511 | $ 45,511 | | | | $ 45,511 | $ 45,511 | | | | | $ 45,511 | $ 138,533 |
| MANUFACTURING RSOURCES | $ 7,000 | $ 7,000 | $ 5,000 | $ 7,000 | $ 26,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 28,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 35,000 | $ 89,000 |
| MONARCH TOOL | $ 7,000 | $ 7,000 | | $ 7,000 | $ 21,000 | $ 7,000 | $ 7,000 | | | $ 14,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 7,000 | $ 35,000 | $ 70,000 |
| IDEAL STAFFING | $ 6,000 | $ 6,000 | $ 4,000 | $ 6,000 | $ 22,000 | $ 6,000 | $ 6,000 | $ 3,000 | | $ 15,000 | $ 6,000 | $ 6,000 | $ 6,500 | $ 6,000 | $ 6,000 | $ 30,000 | $ 67,000 |
| TOOL KING INC | $ 5,000 | | $ 2,500 | | $ 7,500 | $ 5,000 | | $ 5,000 | $ 5,000 | $ 15,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 25,000 | $ 47,500 |
| CITATION BOX & PAPER CO | $ 3,500 | $ 3,500 | $ 2,500 | $ 3,500 | $ 13,000 | $ 3,500 | $ 3,500 | $ 3,500 | | $ 10,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 17,500 | $ 41,000 |
| OEC TOOL CORPORATION | | | $ 7,500 | | $ 7,500 | | | $ 7,500 | | $ 7,500 | | | | | $ 15,000 | $ 15,000 | $ 30,000 |
| KNOX & SCHNEIDER | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 10,000 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,000 | $ 9,500 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 10,000 | $ 29,500 |
| DYNAMEX | $ 2,500 | $ 2,500 | $ 1,000 | $ 2,500 | $ 8,500 | $ 2,500 | $ 2,500 | $ 2,000 | | $ 7,000 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 12,500 | $ 28,000 |
| LANDIS GARDNER | | | | | $ - | | $ 5,000 | | | $ 5,000 | | $ 5,000 | | | $ 5,000 | $ 10,000 | $ 15,000 |
| PROSPECT TOOL | | $ 2,500 | | $ 2,500 | $ 5,000 | | $ 2,500 | | | $ 2,500 | | $ 2,500 | | $ 2,500 | | $ 5,000 | $ 12,500 |
| FBN ENTERPRISES INC | $ 1,000 | $ 1,000 | $ 500 | $ 1,000 | $ 3,500 | $ 1,000 | $ 1,000 | $ 500 | | $ 2,500 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 5,000 | $ 11,000 |
| FINZER ROLLER | | $ 2,500 | | | $ 2,500 | | $ 2,500 | | | $ 2,500 | | $ 2,500 | | | $ 2,500 | $ 5,000 | $ 10,000 |
| TUV RHEINLAND | | | $ 5,000 | | $ 5,000 | | | $ 5,000 | | $ 5,000 | | | | | | $ - | $ 10,000 |
| UNITED STEELWORKERS | | $ 3,000 | | | $ 3,000 | | $ 3,000 | | | $ 3,000 | | $ 2,500 | | | | $ 2,500 | $ 8,500 |
| MC MASTER CARR SUPPLY CO | $ 750 | $ 750 | $ 500 | $ 750 | $ 2,750 | $ 750 | $ 750 | $ 250 | | $ 1,750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 750 | $ 3,750 | $ 8,250 |
| MOTION INDUSTRIES | | $ 1,000 | | $ 1,000 | $ 2,000 | | $ 1,000 | | | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 5,000 | $ 8,000 |
| CENTER POINT ENERGY | $ 2,000 | | | | $ 2,000 | $ 2,500 | | | | $ 2,500 | $ 3,000 | | | | | $ 3,000 | $ 7,500 |
| KEERTHAN INT'L | | $ 2,500 | | | $ 2,500 | | | $ 2,500 | | $ 2,500 | | | $ 2,500 | | | $ 2,500 | $ 7,500 |
| FINKEL SUPPLY, INC | $ 1,000 | | $ 500 | | $ 1,500 | $ 1,000 | | $ 500 | | $ 1,500 | $ 1,000 | | $ 1,000 | | $ 1,000 | $ 3,000 | $ 6,000 |
| INNOVATIONS | $ 1,000 | | | | $ 1,000 | $ 1,000 | | $ 1,000 | | $ 2,000 | $ 1,000 | | $ 1,000 | | $ 1,000 | $ 3,000 | $ 6,000 |
| HC GRAHAM ESTATES | $ 1,631 | | | | $ 1,631 | $ 1,631 | | | | $ 1,631 | $ 1,631 | | | | | $ 1,631 | $ 4,893 |
| TOWER OIL & TECHNOLOGY | | $ 1,500 | | | $ 1,500 | | $ 1,500 | | | $ 1,500 | | $ 1,000 | | | | $ 1,000 | $ 4,000 |
| CINTAS CORPORATION #21 | $ 300 | $ 300 | $ 300 | $ 300 | $ 1,200 | $ 300 | $ 300 | $ 300 | | $ 900 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 1,500 | $ 3,600 |
| EXCALIBER TOOL | $ 500 | | $ 500 | | $ 1,000 | $ 500 | | $ 500 | | $ 1,000 | $ 500 | | $ 500 | | $ 500 | $ 1,500 | $ 3,500 |
| SAFETY KLEEN CORP | $ 500 | | | $ 500 | $ 1,000 | | | $ 500 | | $ 500 | | $ 500 | | | $ 500 | $ 1,000 | $ 2,500 |
| N.K.C. | $ 250 | | $ 250 | | $ 500 | $ 250 | | $ 250 | | $ 500 | $ 250 | | $ 250 | | $ 250 | $ 750 | $ 1,750 |
| ALLIED WASTE | | $ 500 | | | $ 500 | | $ 500 | | | $ 500 | | $ 500 | | | | $ 500 | $ 1,500 |
| ALLTEMATED INC | | | $ 500 | | $ 500 | | | $ 500 | | $ 500 | | | $ 500 | | | $ 500 | $ 1,500 |
| HARRIS EQUIPMENT | | | | | $ - | | | $ 1,500 | | $ 1,500 | | | | | | $ - | $ 1,500 |
| HOWARD EMG | | $ 500 | | | $ 500 | | | $ 500 | | $ 500 | | | $ 500 | | | $ 500 | $ 1,500 |
| INDUSTRIAL TOWEL AND | | $ 400 | | | $ 400 | | $ 400 | | | $ 400 | | $ 400 | | | | $ 400 | $ 1,200 |
| ALL FIVE TOOL COMPANY | | $ 350 | | | $ 350 | | | $ 350 | | $ 350 | | | | $ 350 | | $ 350 | $ 1,050 |
| ACTIVE TOOL | $ 200 | | | | $ 200 | | $ 200 | | | $ 200 | | | $ 200 | | | $ 200 | $ 600 |
| VICTORY MACHINERY | | | $ 200 | | $ 200 | | | $ 200 | | $ 200 | | | $ 200 | | | $ 200 | $ 600 |
| WHITE WAY SIGNS | | $ 87 | | | $ 87 | | $ 87 | | | $ 87 | | $ 87 | | | | $ 87 | $ 261 |
| **Total Indirect Manufacturing Costs** | $ 48,142 | $ 45,387 | $ 33,260 | $ 34,450 | $ 201,329 | $ 47,942 | $ 47,237 | $ 44,850 | $ 14,000 | $ 194,029 | $ 88,942 | $ 51,037 | $ 42,790 | $ 38,900 | $ 61,800 | $ 283,379 | $ 678,737 |

*KL Industries, Inc.*
*Thirteen week Budget Ending February 2, 2007*

| | WEEK BEGINNING 11/6/2006 | WEEK BEGINNING 11/13/2006 | WEEK BEGINNING 11/20/2006 | WEEK BEGINNING 11/27/2006 | NOVEMBER TOTAL | WEEK BEGINNING 12/4/2006 | WEEK BEGINNING 12/11/2006 | WEEK BEGINNING 12/18/2006 | WEEK BEGINNING 12/25/2006 | DECEMBER TOTAL | WEEK BEGINNING 1/1/2007 | WEEK BEGINNING 1/8/2007 | WEEK BEGINNING 1/15/2007 | WEEK BEGINNING 1/22/2007 | WEEK BEGINNING 1/29/2007 | JANUARY TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ***Lease Expenditures*** | | | | | | | | | | | | | | | | | |
| DE LAGE LANDEN FINANCIAL | | $ 1,195 | $ 1,375 | $ 10,000 | $ 12,570 | | $ 1,195 | $ 1,375 | | $ 2,570 | | $ 1,195 | $ 1,375 | | | $ 2,570 | $ 17,710 |
| MATERIAL HANDLING SERVICES | | $ 3,035 | | | $ 3,035 | | $ 3,035 | | | $ 3,035 | | $ 3,035 | | | | $ 3,035 | $ 9,105 |
| KONICA MINOLTA | | $ 1,400 | | | $ 1,400 | | $ 1,400 | | | $ 1,400 | | $ 1,400 | | | | $ 1,400 | $ 4,200 |
| WELLS FARGO FINANCIAL | | $ 1,350 | | | $ 1,350 | | $ 1,350 | | | $ 1,350 | | $ 1,350 | | | | $ 1,350 | $ 4,050 |
| AMERITECH CREDIT CORP | | $ 1,300 | | | $ 1,300 | | $ 1,300 | | | $ 1,300 | | $ 1,300 | | | | $ 1,300 | $ 3,900 |
| CRLI ACCEPTANCE | | $ 1,260 | | | $ 1,260 | | $ 1,260 | | | $ 1,260 | | $ 1,260 | | | | $ 1,260 | $ 3,780 |
| MINOLTA BUSINESS SYSTEMS | $ - | $ 800 | | | $ 800 | | $ 800 | | | $ 800 | | $ 800 | | | | $ 800 | $ 2,400 |
| CSC OFFICE AUTOMATION | | $ 300 | | | $ 300 | | $ 300 | | | $ 300 | | $ 300 | | | | $ 300 | $ 900 |
| BANC OF AMERICA LEASING | | $ 200 | | | $ 200 | | $ 200 | | | $ 200 | | $ 200 | | | | $ 200 | $ 600 |
| ***Total Lease Expenditures*** | $ - | $ 10,840 | $ 1,375 | $ 10,000 | $ 22,215 | $ - | $ 10,840 | $ 1,375 | $ - | $ 12,215 | $ - | $ 10,840 | $ 1,375 | $ - | $ - | $ 12,215 | $ 46,645 |
| ***Selling & General Administration Expenses*** | | | | | | | | | | | | | | | | | |
| CNA INSURANCE | | $ 18,510 | | | $ 18,510 | | $ 18,510 | | | $ 18,510 | | | $ 18,510 | | | $ 18,510 | $ 55,530 |
| FALCON ENTERPRISES | | | $ 20,000 | | $ 20,000 | | | $ 20,000 | | $ 20,000 | | | | $ 15,000 | | $ 15,000 | $ 55,000 |
| PROFESSIONAL BENEFIT ADMINISTRATORS | | | $ 15,000 | | $ 15,000 | | | $ 15,000 | | $ 15,000 | | | | $ 15,000 | | $ 15,000 | $ 45,000 |
| MECHANICAL COMPONENTS | | | $ 13,000 | | $ 13,000 | | | $ 13,000 | | $ 13,000 | | | | $ 12,000 | | $ 12,000 | $ 38,000 |
| GARY WILHITE | | | $ - | $ 7,500 | $ 7,500 | | | | | $ - | $ 7,500 | | | | $ 7,500 | $ 15,000 | $ 22,500 |
| PAUL MACDUFF | | | $ 5,000 | | $ 5,000 | | | $ 5,000 | | $ 5,000 | | | | $ 4,000 | | $ 4,000 | $ 14,000 |
| CHASE CARD SERVICES | | | $ 4,000 | | $ 4,000 | | | $ 4,000 | | $ 4,000 | | | | $ 4,000 | | $ 4,000 | $ 12,000 |
| HARTFORD INSURANCE | | | $ 2,200 | | $ 2,200 | | | $ 2,200 | | $ 2,200 | | | $ 2,200 | | | $ 2,200 | $ 6,600 |
| GABLER, JOHN | | | $ 2,500 | | $ 2,500 | | | $ 2,500 | | $ 2,500 | | | | $ 1,500 | | $ 1,500 | $ 6,500 |
| DOUBLESTONE ASSOCIATES | | | $ 2,000 | | $ 2,000 | | | $ 2,000 | | $ 2,000 | | | | $ 2,000 | | $ 2,000 | $ 6,000 |
| SWAIN, RANDY (EMPLOYEE) | $ 500 | $ 500 | $ 500 | $ 500 | $ 2,000 | $ 500 | $ 500 | $ 500 | | $ 1,500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 2,500 | $ 6,000 |
| GRACE, GEORGE | $ 675 | | | $ 1,000 | $ 1,675 | $ 675 | | $ 1,000 | | $ 1,675 | $ 675 | | | | $ 1,000 | $ 1,675 | $ 5,025 |
| MAJESTY MAINTENANCE INC | $ 1,540 | | | | $ 1,540 | $ 1,540 | | | | $ 1,540 | $ 1,540 | | | | | $ 1,540 | $ 4,620 |
| KARASOWICZ & ASSOCIATES | | $ 1,500 | | | $ 1,500 | | $ 1,500 | | | $ 1,500 | | | $ 1,500 | | | $ 1,500 | $ 4,500 |
| ILLINOIS DEPT OF UNEMPLOYMENT | $ 500 | | $ 1,000 | | $ 1,500 | $ 500 | | $ 500 | | $ 1,000 | $ 500 | | $ 1,000 | | | $ 1,500 | $ 4,000 |
| GMAC PAYMENT PROCESS | | $ 1,270 | | | $ 1,270 | | | $ 1,270 | | $ 1,270 | | | $ 1,270 | | | $ 1,270 | $ 3,810 |
| BALIS, JOHN | $ 245 | $ 245 | $ 245 | $ 245 | $ 980 | $ 245 | $ 245 | $ 245 | $ 245 | $ 980 | $ 245 | $ 245 | $ 245 | $ 245 | $ 245 | $ 1,225 | $ 3,185 |
| FIDELITY INVESTMENTS | | | $ 700 | | $ 700 | | $ 700 | | | $ 700 | $ 700 | | | | $ 700 | $ 1,400 | $ 2,800 |
| HARTFORD INSURANCE | | | $ 800 | | $ 800 | | | $ 800 | | $ 800 | | | $ 800 | | | $ 800 | $ 2,400 |
| SNYDER, ERIC (EMPLOYEE) | | $ 600 | | | $ 600 | | $ 600 | | | $ 600 | | $ 600 | | | | $ 600 | $ 1,800 |
| GORDON LYNEA | $ 250 | | $ 250 | | $ 500 | $ 250 | | $ 250 | | $ 500 | $ 250 | | $ 250 | | $ 250 | $ 750 | $ 1,750 |
| EXXON MOBILE | | | | $ 500 | $ 500 | | | $ 500 | | $ 500 | | | | | $ 500 | $ 500 | $ 1,500 |
| LOGSDON | $ 300 | | | | $ 300 | $ 500 | | | | $ 500 | $ 500 | | | | | $ 500 | $ 1,300 |
| PITNEY BOWES PURCH POWER (postage) | | | | | $ - | | $ 1,000 | | | $ 1,000 | | | | | | $ - | $ 1,000 |
| ADDISON MEDICAL CLINIC | $ 200 | | | | $ 200 | $ 200 | | | | $ 200 | | $ 200 | | | | $ 200 | $ 600 |
| AUTOWEB COMMUNICATION | | | | | $ - | | | | | $ - | | $ 300 | | | | $ 300 | $ 300 |
| ***Total Selling & General Admin Expenses*** | $ 4,210 | $ 22,626 | $ 67,195 | $ 9,745 | $ 103,775 | $ 4,440 | $ 23,855 | $ 68,745 | $ 245 | $ 96,475 | $ 12,410 | $ 1,846 | $ 26,275 | $ 54,245 | $ 10,695 | $ 165,470 | $ 385,720 |

*KL Industries, Inc.*
*Thirteen week Budget Ending February 2, 2007*

| | WEEK BEGINNING 11/6/2006 | WEEK BEGINNING 11/13/2006 | WEEK BEGINNING 11/20/2006 | WEEK BEGINNING 11/27/2006 | NOVEMBER TOTAL | WEEK BEGINNING 12/4/2006 | WEEK BEGINNING 12/11/2006 | WEEK BEGINNING 12/18/2006 | WEEK BEGINNING 12/25/2006 |
|---|---|---|---|---|---|---|---|---|---|
| **Utilities** | | | | | | | | | |
| COMMONWEALTH EDISON | | $ 35,000 | | | $ 35,000 | | $ 35,000 | | |
| NICOR GAS | | $ 12,000 | | | $ 12,000 | | $ 12,000 | | |
| PROGRESS ENERGY CAROLINA | | $ 2,500 | | | $ 2,500 | | $ 2,500 | | |
| AT & T | | $ 500 | | $ 500 | $ 1,000 | | $ 500 | | |
| SPRINT | | | $ 500 | | $ 500 | | | $ 500 | |
| BELL SOUTH | | | | $ 400 | $ 400 | | | | |
| SBC LONG DISTANCE | | $ 400 | | | $ 400 | | $ 400 | | |
| T MOBILE | | | $ 300 | | $ 300 | | $ 300 | | |
| AT & T WIRELESS | | | | $ 200 | $ 200 | | | $ 200 | |
| STAND GUARD | | | $ 150 | | $ 150 | | $ 150 | | |
| WASTE MANAGEMENT | | | $ 150 | | $ 150 | | $ 150 | | |
| CINGULAR WIRELESS | | $ 100 | | | $ 100 | $ 100 | | | |
| SPS COMMERCE | | | $ 85 | | $ 85 | | $ 85 | | |
| **Total Utilities** | $ - | $ 50,500 | $ 1,185 | $ 1,100 | $ 52,785 | $ 100 | $ 51,085 | $ 700 | $ - |
| **Other Expenditures** | | | | | | | | | |
| CONTINGENCIES | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 20,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| **Total Other Expenditures** | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 20,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 |
| **Payroll & Benefits** | | | | | | | | | |
| PAYROLL/PRTAXES | $ 115,000 | $ 115,000 | $ 115,000 | $ 115,000 | $ 460,000 | $ 115,000 | $ 115,000 | $ 115,000 | $ 100,000 |
| HEALTH CLAIMS | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 60,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 |
| **Total Payroll & Benefits** | $ 130,000 | $ 130,000 | $ 130,000 | $ 130,000 | $ 520,000 | $ 130,000 | $ 130,000 | $ 130,000 | $ 115,000 |
| **Debt Service** | | | | | | | | | |
| W&E TERM LOAN - Principal | $ - | | | $ 35,000 | $ 35,000 | | | | |
| W&E TERM LOAN & REVOLVER - Interest | $ - | | | $ 55,000 | $ 55,000 | | | | |
| **Total Debt Service** | $ - | $ - | $ - | $ 90,000 | $ 90,000 | $ - | $ - | $ - | $ - |

| | DECEMBER TOTAL | WEEK BEGINNING 1/1/2007 | WEEK BEGINNING 1/8/2007 | WEEK BEGINNING 1/15/2007 | WEEK BEGINNING 1/22/2007 | WEEK BEGINNING 1/29/2007 | JANUARY TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|
| **Utilities** | | | | | | | | |
| COMMONWEALTH EDISON | $ 35,000 | | $ 35,000 | | | | $ 35,000 | $ 105,000 |
| NICOR GAS | $ 12,000 | | $ 15,000 | | | | $ 15,000 | $ 39,000 |
| PROGRESS ENERGY CAROLINA | $ 2,500 | | $ 2,500 | | | | $ 2,500 | $ 7,500 |
| AT & T | $ 500 | | $ 500 | | $ 500 | | $ 1,000 | $ 2,500 |
| SPRINT | $ 500 | | | $ 500 | | | $ 500 | $ 1,500 |
| BELL SOUTH | $ - | | $ 400 | | $ 400 | | $ 800 | $ 1,200 |
| SBC LONG DISTANCE | $ 400 | | $ 400 | | | | $ 400 | $ 1,200 |
| T MOBILE | $ 300 | | $ 300 | | | | $ 300 | $ 900 |
| AT & T WIRELESS | $ 200 | | | | $ 200 | | $ 200 | $ 600 |
| STAND GUARD | $ 150 | | $ 150 | | | | $ 150 | $ 450 |
| WASTE MANAGEMENT | $ 150 | | $ 150 | | | | $ 150 | $ 450 |
| CINGULAR WIRELESS | $ 100 | | $ 100 | | | | $ 100 | $ 300 |
| SPS COMMERCE | $ 85 | | $ 85 | | | | $ 85 | $ 255 |
| **Total Utilities** | $ 51,885 | $ - | $ 54,585 | $ 500 | $ 1,100 | $ - | $ 56,185 | $ 160,855 |
| **Other Expenditures** | | | | | | | | |
| CONTINGENCIES | $ 20,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 25,000 | $ 65,000 |
| **Total Other Expenditures** | $ 20,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 25,000 | $ 65,000 |
| **Payroll & Benefits** | | | | | | | | |
| PAYROLL/PRTAXES | $ 445,000 | $ 90,000 | $ 115,000 | $ 115,000 | $ 115,000 | $ 115,000 | $ 550,000 | $ 1,455,000 |
| HEALTH CLAIMS | $ 60,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 75,000 | $ 195,000 |
| **Total Payroll & Benefits** | $ 505,000 | $ 105,000 | $ 130,000 | $ 130,000 | $ 130,000 | $ 130,000 | $ 625,000 | $ 1,650,000 |
| **Debt Service** | | | | | | | | |
| W&E TERM LOAN - Principal | $ - | $ 35,000 | | | | $ 35,000 | $ 70,000 | $ 105,000 |
| W&E TERM LOAN & REVOLVER - Interest | $ - | $ 55,000 | | | | $ 55,000 | $ 110,000 | $ 165,000 |
| **Total Debt Service** | $ - | $ 90,000 | $ - | $ - | $ - | $ 90,000 | $ 180,000 | $ 270,000 |

*KL Industries, Inc.*
*Thirteen week Budget Ending February 2, 2007*

| | WEEK BEGINNING 11/6/2006 | WEEK BEGINNING 11/13/2006 | WEEK BEGINNING 11/20/2006 | WEEK BEGINNING 11/27/2006 | NOVEMBER TOTAL | WEEK BEGINNING 12/4/2006 | WEEK BEGINNING 12/11/2006 | WEEK BEGINNING 12/18/2006 | WEEK BEGINNING 12/25/2006 | DECEMBER TOTAL | WEEK BEGINNING 1/1/2007 | WEEK BEGINNING 1/8/2007 | WEEK BEGINNING 1/15/2007 | WEEK BEGINNING 1/22/2007 | WEEK BEGINNING 1/29/2007 | JANUARY TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Restructuring Expenditures** | | | | | | | | | | | | | | | | | |
| Debtor's Counsel - Bankruptcy Matters | | | | $ 45,000 | $ 45,000 | | | | $ 45,000 | $ 45,000 | | | | | $ 45,000 | $ 45,000 | $ 135,000 |
| Labor Attorney | | | | $ 4,000 | $ 4,000 | | | | | $ - | $ 4,000 | | | | $ 4,000 | $ 8,000 | $ 12,000 |
| Debtor's Financial Advisor - Consulting | | | | $ 20,000 | $ 20,000 | | | | $ 17,500 | $ 17,500 | | | | | $ 17,500 | $ 17,500 | $ 55,000 |
| Debtor's Financial Advisor - Fees Re: Sale of Co | | | | | $ - | | | | | $ - | | | | | | $ - | $ - |
| Investment Banker Fees | | | | | $ - | | | | | $ - | | | | | | $ - | $ - |
| Creditors Committee Professionals | | | | | $ - | | | | | $ - | | | | | | $ - | $ - |
| Lender's Counsel | | | | $ 15,000 | $ 15,000 | | | | $ 25,000 | $ 25,000 | | | | | $ 25,000 | $ 25,000 | $ 65,000 |
| DIP Loan Fee | $ 7,500 | | | | $ 7,500 | $ 7,500 | | | | $ 7,500 | $ 7,500 | | | | $ 7,500 | $ 15,000 | $ 30,000 |
| Professional Fee Holdback | | | $ 133,000 | | $ 133,000 | | | | | $ - | | | | | | $ - | $ 133,000 |
| US Trustee Fee/Court Fees | | | | | $ - | | | | | $ - | | | $ 10,000 | | | $ 10,000 | $ 10,000 |
| **Total Restructuring Expenditures** | $ 7,500 | $ - | $ 133,000 | $ 84,000 | $ 224,500 | $ 7,500 | $ - | $ - | $ 87,500 | $ 95,000 | $ 11,500 | $ - | $ 10,000 | $ - | $ 99,000 | $ 120,500 | $ 440,000 |
| **Total Expenditures** | $ 512,702 | $ 536,902 | $ 562,705 | $ 601,945 | $ 2,214,254 | $ 490,002 | $ 516,767 | $ 441,240 | $ 222,995 | $ 1,671,004 | $ 568,402 | $ 540,857 | $ 495,400 | $ 501,595 | $ 665,045 | $ 2,771,299 | $ 6,656,557 |
| **Collections** | | | | | | | | | | | | | | | | | |
| Current Receivable Collections | $ 554,000 | $ 554,000 | $ 655,000 | $ 655,000 | $ 2,418,000 | $ 590,000 | $ 655,000 | $ 559,000 | $ 494,000 | $ 2,298,000 | $ 397,000 | $ 264,000 | $ 471,000 | $ 378,000 | $ 378,000 | $ 1,888,000 | $ 6,604,000 |
| Collection of Past Due Accounts | | | | | | | | | | | | | | | | | |
| Scrap, Machinery and Excess Inventory | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 50,000 | $ 12,500 | $ 12,500 | $ 12,500 | $ 57,500 | $ 95,000 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 12,500 | $ 62,500 | $ 207,500 |
| **Total Cash Collections** | $ 566,500 | $ 566,500 | $ 667,500 | $ 667,500 | $ 2,468,000 | $ 602,500 | $ 667,500 | $ 571,500 | $ 551,500 | $ 2,393,000 | $ 409,500 | $ 276,500 | $ 483,500 | $ 390,500 | $ 390,500 | $ 1,950,500 | $ 6,811,500 |
| **Cash Surplus (Shortfall)** | $ 53,798 | $ 29,598 | $ 104,795 | $ 65,555 | $ 253,746 | $ 112,498 | $ 150,733 | $ 130,260 | $ 328,505 | $ 721,996 | $ (158,902) | $ (264,357) | $ (11,900) | $ (111,095) | $ (274,545) | $ (820,799) | $ 154,943 |
| **Cumulative Surplus (Shortfall)** | $ 53,798 | $ 83,396 | $ 188,191 | $ 253,746 | | $ 366,244 | $ 516,977 | $ 647,237 | $ 975,742 | | $ 816,840 | $ 552,483 | $ 540,583 | $ 429,488 | $ 154,943 | | |
| **Collateral Analysis** | | | | | | | | | | | | | | | | | |
| **Accounts Receivable Rollforward** | | | | | | | | | | | | | | | | | |
| Beginning Balance (net of ineligibles) | $ 3,005,897 | $ 2,976,897 | $ 2,972,897 | $ 2,792,897 | | $ 2,762,897 | $ 2,722,897 | $ 2,607,897 | $ 2,548,897 | | $ 2,054,897 | $ 2,182,897 | $ 2,493,897 | $ 2,572,897 | $ 2,744,897 | | $ 3,005,897 |
| Sales | $ 525,000 | $ 550,000 | $ 475,000 | $ 625,000 | $ 2,175,000 | $ 550,000 | $ 540,000 | $ 500,000 | $ - | $ 1,590,000 | $ 525,000 | $ 575,000 | $ 550,000 | $ 550,000 | $ 650,000 | $ 2,850,000 | $ 6,615,000 |
| Collections | $ (554,000) | $ (554,000) | $ (655,000) | $ (655,000) | $ (2,418,000) | $ (590,000) | $ (655,000) | $ (559,000) | $ (494,000) | $ (2,298,000) | $ (397,000) | $ (264,000) | $ (471,000) | $ (378,000) | $ (378,000) | $ (1,888,000) | $ (6,604,000) |
| Eligibility Adjustment | $ - | | $ - | | $ - | | | | | $ - | | | | | | $ - | $ - |
| Ending Balance | $ 2,976,897 | $ 2,972,897 | $ 2,792,897 | $ 2,762,897 | | $ 2,722,897 | $ 2,607,897 | $ 2,548,897 | $ 2,054,897 | | $ 2,182,897 | $ 2,493,897 | $ 2,572,897 | $ 2,744,897 | $ 3,016,897 | | $ 3,016,897 |
| **Advance Rate** | 85% | 85% | 85% | 85% | | 85% | 85% | 85% | 85% | | 85% | 85% | 85% | 85% | 85% | | |
| **Eligible Collateral** | $ 2,530,000 | $ 2,527,000 | $ 2,374,000 | $ 2,348,000 | | $ 2,314,000 | $ 2,217,000 | $ 2,167,000 | $ 1,747,000 | | $ 1,855,000 | $ 2,120,000 | $ 2,187,000 | $ 2,333,000 | $ 2,564,000 | | |
| **Inventory-At Maximum Availability** | $ 625,000 | $ 625,000 | $ 625,000 | $ 650,000 | | $ 625,000 | $ 625,000 | $ 625,000 | $ 625,000 | | $ 625,000 | $ 625,000 | $ 625,000 | $ 625,000 | $ 625,000 | | |
| **Total Eligible Collateral** | $ 3,155,000 | $ 3,152,000 | $ 2,999,000 | $ 2,998,000 | | $ 2,939,000 | $ 2,842,000 | $ 2,792,000 | $ 2,372,000 | | $ 2,480,000 | $ 2,745,000 | $ 2,812,000 | $ 2,958,000 | $ 3,189,000 | | |
| **Overdraft Facility** | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | $ 500,000 | | |
| **Total Borrowing Capacity** | $ 3,655,000 | $ 3,652,000 | $ 3,499,000 | $ 3,498,000 | | $ 3,439,000 | $ 3,342,000 | $ 3,292,000 | $ 2,872,000 | | $ 2,980,000 | $ 3,245,000 | $ 3,312,000 | $ 3,458,000 | $ 3,689,000 | | |
| **Revolver Balance Outstanding** | | | | | | | | | | | | | | | | | |
| Beginning Loan Balance | $ 3,674,098 | $ 3,620,300 | $ 3,590,702 | $ 3,485,907 | | $ 3,420,352 | $ 3,307,854 | $ 3,157,121 | $ 3,026,861 | | $ 2,698,356 | $ 2,857,258 | $ 3,121,615 | $ 3,133,515 | $ 3,244,610 | | $ 3,674,098 |
| Advances | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 158,902 | $ 264,357 | $ 11,900 | $ 111,095 | $ 274,545 | $ 820,799 | $ 820,799 |
| (Repayments) | $ (53,798) | $ (29,598) | $ (104,795) | $ (65,555) | $ (253,746) | $ (112,498) | $ (150,733) | $ (130,260) | $ (328,505) | $ (721,996) | $ - | $ - | $ - | $ - | $ - | $ - | $ (975,742) |
| Ending Loan Balance | $ 3,620,300 | $ 3,590,702 | $ 3,485,907 | $ 3,420,352 | | $ 3,307,854 | $ 3,157,121 | $ 3,026,861 | $ 2,698,356 | | $ 2,857,258 | $ 3,121,615 | $ 3,133,515 | $ 3,244,610 | $ 3,519,155 | | $ 3,519,155 |
| **Excess Availability / (Shortfall)** | $ 34,700 | $ 61,298 | $ 13,093 | $ 77,648 | | $ 131,146 | $ 184,879 | $ 265,139 | $ 173,644 | | $ 122,742 | $ 123,385 | $ 178,485 | $ 213,390 | $ 169,845 | | |

*KL Industries, Inc.*
*Thirteen week Budget Ending February 2, 2007*

| WEEK BEGINNING 11/6/2006 | WEEK BEGINNING 11/13/2006 | WEEK BEGINNING 11/20/2006 | WEEK BEGINNING 11/27/2006 | NOVEMBER TOTAL | WEEK BEGINNING 12/4/2006 | WEEK BEGINNING 12/11/2006 | WEEK BEGINNING 12/18/2006 | WEEK BEGINNING 12/25/2006 | DECEMBER TOTAL | WEEK BEGINNING 1/1/2007 | WEEK BEGINNING 1/8/2007 | WEEK BEGINNING 1/15/2007 | WEEK BEGINNING 1/22/2007 | WEEK BEGINNING 1/29/2007 | JANUARY TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

*Notes and Limiting Assumptions:*

1. Assumes the Company will continue operations through the forecast period ending February 2, 2007.
2. Collections are estimated based on a fifty day lag period from the date of sale consistent with the Company's prior performance for all customers except General Motors. Sales to General Motors Subsequent to May 18, 2006 are estimated to be collected based on ten day terms.
3. Budget assumes that inventory is stable with maximum availability of $625,000 through the projection period
4. This budget does not include a provision for the payment of approximately $150,000 in employee health care claims that are currently outstanding.
5. Trade creditors will have an administrative claim for goods delivered within twenty days of bankruptcy. This budget does not include any provision for administrative claims that may be asserted by vendors.
6. This budget is a work in process and as a result as new information becomes available the budget will be adjusted accordingly.